## NATIONAL AID LIFE ASS'N v. MILLER.
### No. 903.

Court of Civil Appeals of Texas. Eastland.

Oct. 30, 1931.

Rehearing Denied Dec. 4, 1931. ·

Snyder, Owen & Lybrand, of Oklahoma City, Okl., and J. A. Johnson, of Stephenville, for appellant.

Oxford & McMillan, of Stephenville, for appellee.

LESLIE, J.

Mrs. Auda Miller instituted this suit to recover of the National Aid Life Association on an insurance certificate issued to her deceased husband, B. D. Miller. The defendant answered by general demurrer, special exceptions, and urged special defenses. The trial was before the court and jury, and upon answers to special issues judgment was rendered in favor of plaintiff; hence this appeal.

The specially alleged defenses were: (1) That the assured Miller made false representations and warranties in his application for insurance, and (2) that, by the terms of the insurance certificate, it was provided that the same should not become effective unless he was in good health when same was delivered to him, and that he was not in such health at the time of its delivery.

The defendant, appellant here, is an Oklahoma corporation, with permit to transact its business in Texas by virtue of chapter 5, title 78, Revised Civil Statutes of 1925 (articles 4781–4783). The company is there designated as a foreign assessment company, "carrying on the business of life or casualty insurance on the assessment or natural premium plan. * * *" That it is such company appears from the record. It has the elements and characteristics of such. State v. Root, 83 Wis. 667, 54 N. W. 33, 19 L. R. A. 271; 1 Words and Phrases, First Series, page 554.

This leads to the first important question to be decided. It is presented by a cross-assignment. The court permitted the introduction in evidence by appellant of the written application of B. D. Miller for insurance. The appellee's objections were to the effect that the application formed no part of the contract of insurance and that the certificate of insurance was not accompanied by written. photographic, or printed copy of the application, as well as a copy of questions and answers, etc. The objection is based upon articles 5049 and 5050 of the Revised Statutes. Where the contract of insurance is not so accompanied, the penalty is to exclude the application and questions and answers from the insurance contract, notwithstanding it may be referred to in the policy as a part thereof. National Live Stock Ins. Co. v. Gomillion (Tex. Civ. App.) 178 S. W. 1050; National Life & Acc. Ins. Co. v. Love (Tex. Civ. App.) 282 S. W. 829; Southern Ins. Co. v. Nicholson (Tex. Civ. App.) 292 S. W. 569.

However, said articles of the statute have no application to the instant case, which,

as noted, is one to recover on a contract of insurance issued by a company carrying on the business of life insurance on the "assessment or natural premium plan." Chapter 5, title 78, supra. This is said in view of article 5042, R. S. 1925, which reads: "No provision of this chapter shall apply to companies carrying on the business of life or casualty insurance on the assessment or annual premium plan, under the provisions of this title."

The chapter referred to is chapter 21 (article 5034 et seq.), and articles 5049 and 5050 are a part thereof. The defendant company is therefore excluded from the operation of said articles, and the court did not err in admitting the application and answers.

■ At this point it may be noted that the word "annual" is inadvertently used in article 5042, and the word "natural" was evidently intended. The history of the article shows this, and further conclusively shows that the exclusion in article 5042 points to the foreign assessment companies dealt with in chapter 5. Further, the testimony discloses that the defendant is not an insurance company on the "annual" premium plan. The history of the above article and the evidence of the inadvertent use of the word "annual" for "natural" is set forth in the opinion in North American Accident Ins. Co. v. Hodge et al. (Tex. Civ. App.) 208 S. W. 700. That is authority for our conclusions just stated.

Said article 5042 not only exempts the defendant company from the operation of the articles of the statute mentioned, but also other articles of that chapter, among them being articles 5043, 5044, 5045, et seq.

We now pass to a consideration of the controlling question in the case. It is presented by appellant's eighth assignment of error and is to the effect that the court erred in refusing the defendant's requested peremptory instruction. In passing on this question the testimony must be considered from two different aspects: That which bears upon the alleged breach of the provision of the contract requiring the insured to be in good health when the certificate of insurance was delivered to him, and that bearing upon the alleged false representations and warranties.

■ The first contention is based upon the following provision of the certificate of insurance: " * * * And this certificate is not effective unless delivered into the manual possession of the applicant while he is still in good health."

When such a provision is found in the contract and a breach thereof is under the pleadings established, it constitutes a valid defense to any claim founded on the contract. Wright v. Federal Life Ins. Co. (Tex. Com. App.) 248 S. W. 325, (1) (4); Logan v. New York Life Ins. Co., 107 Wash. 253, 181 P. 906.

■ However, the record in this case does not require further consideration of this

point, since the trial court gave no issue thereon, and none was requested by the appellant. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

Further, the testimony on the issue is not of such a nature as would have justified the court in taking the same from the jury.

■ The testimony will now be considered in its relation to the other defensive issue arising out of alleged false representations and warranties in matters of inducement in procuring the insurance.

It will be borne in mind that B. D. Miller was a member of what was known as the Stephenville Mutual Life Insurance Association. The membership of that association, including said Miller, was merged into the membership of the defendant, the National Aid Life Association. In his application to the Stephenville Mutual for membership he certified: "I hereby make application for membership in the Stephenville Mutual Life Insurance Association, Stephenville, Texas, January 26th, 1929, a local mutual aid association operating under the laws of the State of Texas, and declare and warrant that the answers are complete and true, and shall form a basis of contract between me and said association, and further agree that, if any untrue statements have been made with fraudulent intent in the application as to age, health, family history or other questions that would materially increase the risk assumed, the certificate becomes void and of no effect. * * *"

The application then contained various questions, after which said Miller's answers were written, not by himself, but by the secretary and manager of the association, R. L. Meek. The application as thus placed in the files of the Stephenville Association disclosed questions 15, 16, 20, and 21, and their answers, as follows:

"15. Have you ever had pneumonia, cancer, appendicitis, or been troubled with heart, lung or kidney disease? Answer No.

"16. Are you now in good health? Answer Yes."

"20. Have you been treated by a physician for the past two years? Answer No.

"21. Do you have fits, fainting spells, high blood pressure, vertigo or any nervous disease? Answer No."

This application, with all of its questions and purported answers, was delivered by the Stephenville Mutual to the defendant association when those two companies were in the process of "merging" the membership of the former association with that of the latter. That application, with its indicated answers, formed the basis of the negotiations by the defendant company with the membership of the Stephenville Mutual.

In the "memorandum of agreement" between the two associations looking to said merger, among other things it was agreed:

"Whereas party of the first part (the National Aid Life Association) is duly licensed to do business in the State of Texas, and has complied with all requirements of statutes of said state, and is willing to admit to its membership all the members of said second party, (Stephenville Mutual Life Insurance Association) without further medical examination and without expense except as hereinafter provided, and to issue benefit certificates to said newly transferred members, same to be accepted in lieu of benefit certificates in this association now held by them, said certificates to be issued in consideration of the warranties of the truth of the statements made by said members in their original application to this association, it being understood that same will become a part of the new benefit certificates to be issued by party of the first part, with like force and effect as though said application had originally been addressed to first party.

"Provided, however, * * * each transfer of membership is to be effected by a written receipt of the transferred member, acknowledging receipt from the first party of its new benefit certificate, and a release of the second party from any other or further obligations by reason of the issuance of said old certificate, said first party not to be bound until said receipt is executed by the insured during his lifetime and mailed to first party."

The agreement between the two associations was consummated and the defendant issued to the members of the Stephenville Mutual its certificate of insurance. The deceased Miller's certificate carried the following stipulations:

"In consideration of the application for membership and the warranty that each and every statement and answer made therein is true and correct, and that said warranties are the only statements constituting any portion of the consideration for this benefit certificate, the member B. D. Miller of Alexander, Texas, is hereby received into the membership of the National Aid Life Association. * * *

"This certificate is issued upon the warranty by the applicant that all statements and answers to questions made in the application for same are true, said application being by reference made a material part of this contract, and this certificate is not effective unless delivered into the manual possession of the applicant while he is still in good health."

In compliance with the merger agreement between the associations, and in order to render his own certificate effective, he receipted for same in this language:

"I hereby acknowledge receipt of Texas Group Plan No. 2 Benefit Certificate issued to me by the National Aid Life Association of Oklahoma City, Oklahoma, and agree to accept same, effective with the signing and mailing hereof to said National Aid Life Association and to release Stephenville Mutual Life Insurance Association of Stephenville, Texas, from any claim for death benefits arising after the said mailing hereof, under terms of my benefit certificate issued by said association last named.

"I understand that I cannot become a member of said National Aid Life Association unless I sign and mail this receipt while I yet live, and that said act by me is a condition precedent to any liability of the last named association.

"This receipt is issued and delivered to said National Aid Life Association in conformity with the recent contract made by the two associations aforesaid.

"Dated at Alexander, Texas, this 11th day of October, 1929.

"[Signed]        B. D. Miller,   Member."

The contract of insurance involved in this suit grew out of the independent negotiations that passed between the deceased Miller and the National Aid Life Association. It is the product of the mutual assent of the deceased and the defendant. In ways too numerous to restate, the deceased Miller accepted the insurance contract upon the specific terms indicated and warranted the truthfulness of the statements and answers to be found in his original application to the Stephenville Mutual, and further agreed that said application should be a material part of the instant contract. His means of knowledge of these matters were superior to that of the defendant, and this record presents nothing by way of waiver or estoppel that would deprive the defendant of any benefit arising from a breach of such warranties. Therefore, it remains to determine whether or not said answers and statements made in the original application to the Stephenville Mutual, and reaffirmed in the application to this defendant, were true when made and offered as an inducement to the defendant to issue to him the certificate in suit.

In considering the testimony upon this phase of the case, the contents of the plaintiff's trial amendment cannot be overlooked. In the first paragraph thereof it is affirmatively alleged:

"That on the 26th day of January, 1929, insured, B. D. Miller, called at the general office of the Stephenville Mutual Life Insurance Association of Stephenville, Texas, * * * and made verbal application to R. L. Meek, who was soliciting agent, secretary and general manager of said association, for membership in said association. That said R. L. Meek asked the said B. D. Miller several questions, among others being No. 15, as follows: 'Have you ever had pneumonia, cancer, appendicitis, or been troubled with heart,

lung or kidney disease?' And that insured, B. D. Miller, answered: 'Had appendix removed and have asthma.'

"That he did not answer said question 'No', as appears to have been written by the said Meek in the application exhibited in evidence.

"That the said R. L. Meek further read and asked insured, B. D. Miller, Question No. 16, as follows: 'Are you now in good health?' And the insured answered: 'No, I have been knocked out, but am able to be up and up here.' And that he did not answer said question 'Yes.'

"That Question No. 20 was put to him: 'Have you been treated by a physician in the past two years?' And he answered: 'Yes, Drs. Yarbrough and Gaines.' And that he did not answer said question 'No.'

"Question No. 21 was: "Do you have fits, fainting spells, high blood pressure, vertigo or any nervous disease?' And that the insured made no answer to said question and interrogatory and did not answer the same 'No.' "

Returning to questions 15, 16, 20, and 21, and their answers as contained in the application to the Stephenville Mutual, and which was the basis upon which the defendant negotiated with the deceased, we find that the defendant would derive the following information from the same: That said Miller had never had pneumonia, cancer, appendicitis, heart trouble, lung or kidney disease; that he was then in good health; that he had not been treated by a physician for the past two years, and that he had never had fits, fainting spells, high blood pressure, vertigo, or any nervous disease. Plaintiff, by the above trial amendment, filed in resistance of the defenses being considered, alleges that the answers just referred to were not in fact given by the insured, but that he stated in answer to said questions the true condition of his health, etc., as follows: That he had had his appendix removed and had asthma, in answer to question 15; that in answer to the question, "Are you now in good health?" (16), he answered, "No, I have been knocked out but am able to be up and up here"; that in answer to question 20 he stated he had been treated by Drs. Yarbrough & Gaines during the past two years; and that he made no answer to question No. 21.

From the foregoing it conclusively appears that the answers in the original application to the Stephenville Mutual, warranted to be true by the deceased in his application for insurance to the defendant, are false, and the testimony adduced by the plaintiff to establish the allegations of the trial amendment confirms this conclusion.

The plaintiff seeks to avoid this situation, or the effect of the conflict between answers and statements in the application made to the Stephenville Mutual, and also made and reaffirmed to the defendant, by alleging and offering testimony to the effect that the deceased gave true and correct answers (as indicated in the above pleading) to all the questions, but that one Meek fraudulently and falsely transcribed the answers to the questions; and in this manner the plaintiff seeks to bind the defendant by the knowledge and fraudulent conduct on the part of said Meek.

In a contest between the Stephenville Mutual and the plaintiff on the same issues and under like circumstances, it might be held that the conduct of Meek, the agent of the Stephenville Mutual, would operate to estop that association from setting up the falsity of the said answers and statements. Schumann v. Brownwood Mutual Life Association (Tex. Com. App.) 286 S. W. 200, and American Insurance Union v. Monk (Tex. Civ. App.) 16 S.W.(2d) 371, would probably justify such a holding under the facts of the instant case, but the Stephenville Mutual is not here involved, and this suit is on a certificate of insurance issued by the defendant and delivered to the deceased upon warranties and representations made directly to it, and as a consideration for its delivering to him the policy which forms the basis of this suit.

Under this record the defendant could in no way be charged with knowledge or put on notice of what the agent Meek is alleged to have done. There is neither pleading nor testimony that would warrant a disposition of this case upon the theory that Meek was ever the agent or representative of the defendant company in any of the transactions hereinbefore detailed. The fraud, if any, committed by him, was long prior to the time of the negotiations looking to the merger of the two companies.

We believe that it conclusively appears that the answers and statements in the application for insurance, warranted to be true and correct, are not true, and that this defeats the plaintiff's right of recovery on the policy, and that without regard to the materiality of said claims and answers. Kansas City Life Ins. Co. v. Blackstone (Tex. Civ. App.) 143 S. W. 702; Id., 107 Tex. 102, 174 S. W. 821; Modern Order of Praetorians v. Davidson (Tex. Civ. App.) 203 S. W. 379; Hemphill County Home Protective Ass'n v. Richardson (Tex. Civ. App.) 264 S. W. 295; Sovereign Camp, W. O. W., v. Harmon (Tex. Civ. App.) 246 S. W. 704.

However, if we are mistaken in this, we are of opinion that the answers and statements warranted to be true were and are of a most material nature. What is said with reference to the unimportance of the materiality of the statements is in view of the character of insurance business conducted by the defendant, which is exempted by arti-

cle 5042 from the provisions of chapter 21, as set out in the first part of this opinion.

■ The case is one which has been fully developed, and the testimony being chiefly documentary in nature, and our conclusions as to the nature of the answers warranted being fully confirmed by the jury's verdict, the judgment of the trial court will, for the reasons assigned, be reversed, and judgment here rendered in favor of the appellant.